SAULSBURY, RESPESS & COMPANY *et al.,* plaintiffs in error, *vs.* H. & F. BLANDY, defendant in error.

53   665
115  128

1. Where the defendants agreed to accept a draft drawn by a third person in favor of the complainants, payable six months after date, given for a steam engine purchased by the drawer, a bill against them cannot be sustained for failing to accept a draft totally different on its face from the one agreed on, though it may be alleged that it was the instrument *contemplated* by the parties.
2. If it had been alleged that the draft attached to the bill was the same instrument that the defendants agreed to accept, and that upon the faith of such agreement the engine was delivered to the drawer, that would have been such a part performance by the complainants as would have required a performance of their contract upon the part of the defendants, and would have prevented them from pleading the statute of frauds.

Equity.  Bills of exchange.  Contracts.  Statute of frauds. Before Judge HILL.  Bibb Superior Court.  April Adjourned Term, 1874.

For the facts, see the decision.

POE, HALL & LOFTON; E. F. BEST, for plaintiffs in error.

LANIER & ANDERSON, for defendants.

WARNER, Chief Justice.

This was a bill filed by complainants against the defendants, in which they alleged that in September, 1871, one Wimberly proposed to purchase of complainants' agent, Parker, a steam engine which he had for sale for them; that complainants' agent and Wimberly agreed on the price of the engine, the same being $1,170 21.  Wimberly wanted the engine on a credit of six months, to which the complainants' agent agreed, upon his giving security.  Complainants' agent, Parker, and Wimberly, had an interview with Saulsbury, Respess & Company, warehousemen and cotton factors, concerning the proposed sale of the steam engine as aforesaid, when they agreed to accept the draft of said Wimberly for the amount of the purchase money of said engine, on presentation, a copy of which draft is attached to complainants' bill as an exhibit. Complainants allege that upon the faith of this agreement to accept the draft of Wimberly for the price of the engine, the same was delivered to him, and on the first of October thereafter, 1871, the draft contemplated in said agreement was presented to Saulsbury, Respess & Company for acceptance, when they refused to accept the same, although informed of the delivery of the engine to Wimberly under their promise to accept Wimberly's draft for the purchase money therefor, and that Wimberly is insolvent.  The draft attached to the complainants' bill as an exhibit was drawn by Wimberly, payable to his own order, six months after date, for provisions and commercial manures, to make a crop for the year 1872, and

created a lien on his crop for that year for the payment thereof. The defendants demurred to the complainants' bill, the court overruled the demurrer, and the defendants excepted.

1. There is nothing in this draft which it is alleged the defendants refused to accept, going to show that it was for the purchase money of the steam engine sold by complainants' agent to Wimberly, but on the contrary, it appears on the face of it that it was drawn upon the defendants by Wimberly for provisions and commercial manures to make his crop for the year 1872. Assuming that the defendants did agree to accept a draft drawn by Wimberly upon them for the price of the engine, and that the same was delivered to Wimberly on the faith of that agreement, still, the draft which it is alleged the defendants refused to accept, attached to the complainants' bill, is not a draft of that description. The draft which the defendants refused to accept, set forth in the complainants' bill, is not drawn by Wimberly in favor of the complainants or their agent, and does not purport on its face to be for the purchase money of the engine, and the court could not have presumed that it was, because it is expressly stated on the face of the draft that it was drawn on the defendants for a different consideration, to-wit: for provisions and commercial manures to make a crop for the year 1872. The defendants were not bound to accept that draft under their alleged agreement. The complainants do not allege that the draft attached to their bill, which the defendants refused to accept, was the same draft that they agreed to accept for the purchase price of the engine sold and delivered to Wimberly; that fact cannot be inferred from the face of the paper, and the allegations in the bill are to be taken most strongly against the complainants. It is true that the complainants allege that the draft presented to the defendants for their acceptance, was the draft *contemplated* in said agreement, but when the draft that was presented for the defendants' acceptance is compared with the alleged agreement, that allegation is not sustained. The bill was therefore demurrable because it was not alleged therein that the draft attached thereto,

which the defendants refused to accept, was the same draft that they agreed to accept for the price of the engine.

2. If the complainants had alleged that the draft attached to their bill was the same draft that the defendants agreed to accept for Wimberly as the price of the engine, and that upon the faith of that agreement the engine was delivered to Wimberly, that would have been such a *part performance* of the agreement by the complainants as would have rendered it a fraud on the part of the defendants in refusing to comply with their agreement to accept the draft, and a court of equity would compel them to perform it on their part, and they would not be permitted to plead the statute of frauds to protect themselves from its performance: Code, sec. 1951. The statute was enacted to prevent fraud, and not for its encouragement or protection. In view of the allegations as contained in the complainants' bill, the overruling of the defendants' demurrer thereto was error.

Let the judgment of the court below be reversed.